1
2
3
4
5
6            UNITED STATES DISTRICT COURT
7                  DISTRICT OF NEVADA
8                          * * *
9   JOSHUA H. CRITTENDON,              Case No.  2:17-cv-01700-RFB-PAL
10              Plaintiff,              **SCREENING ORDER**
11        v.
12  JOE LOMBARDO et al.,
13              Defendants.
14

Plaintiff, who is an inmate in the custody of the Clark County Detention Center ("CCDC"), has submitted a civil rights complaint pursuant to 42 U.S.C. § 1983 and has filed an application to proceed *in forma pauperis* and two motions for appointment of counsel. (ECF No. 1, 1-1, 8, 19). The Court now addresses the application to proceed *in forma pauperis*, screens Plaintiff's civil rights complaint pursuant to 28 U.S.C. § 1915A, and addresses the remaining motions.

I.    *IN FORMA PAUPERIS* APPLICATION

Before the Court is Plaintiff's application to proceed *in forma pauperis*. (ECF No. 1). Based on the information regarding Plaintiff's financial status, the Court finds that Plaintiff is not able to pay an initial installment payment toward the full filing fee pursuant to 28 U.S.C. § 1915. Plaintiff will, however, be required to make monthly payments toward the full $350.00 filing fee when he has funds available.

## II.    SCREENING STANDARD

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1),(2). *Pro se* pleadings, however, must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, pursuant to the Prison Litigation Reform Act (PLRA), a federal court must dismiss a prisoner's claim, if "the allegation of poverty is untrue," or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d

756, 759 (9th Cir. 1999). In making this determination, the court takes as true all allegations of material fact stated in the complaint, and the court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *Id.*

Additionally, a reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Finally, all or part of a complaint filed by a prisoner may therefore be dismissed *sua sponte* if the prisoner's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (e.g., fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

**III.    SCREENING OF COMPLAINT**

In the complaint, Plaintiff, a pretrial detainee, sues multiple defendants for events

that took place while Plaintiff was incarcerated at the Clark County Detention Center ("CCDC"). (ECF No. 1-1 at 1, 4). Plaintiff sues Defendants Sheriff Joe Lombardo, SERT Team Sergeant Rogers, Officer Torrez, Naphcare Supervisor Williamson, Officer Sanches, Officer Brown, Naphcare Staff[1], and John Doe. (*Id.* at 2-4). Plaintiff alleges three counts[2] and seeks declaratory judgment, injunctive relief, and monetary damages. (*Id.* at 15, 23-26).

## A. Count I

On November 15, 2015, Sanches told Plaintiff to "cuff up" because Plaintiff had a visitor. (ECF No. 1-1 at 6). After Plaintiff cuffed up and the door opened, Sanches grabbed Plaintiff's shirt and directed Plaintiff to the stairs. (*Id.*) As they neared the stairs, Plaintiff stopped to avoid getting pushed down the stairs. (*Id.*) Sanches interrupted the stop as resistance and slammed Plaintiff to the ground. (*Id.*) Sanches put his knee on the side of Plaintiff's face and wrenched and twisted Plaintiff's wrists. (*Id.*) Officer John Doe asked Sanches what he was doing and said "to be easy." (*Id.*) Sanches got on the radio and called Sgt. Reynolds who punished Plaintiff for whatever Sanches had told him. (*Id.*) Plaintiff missed his attorney visit and suffered from bruises and severe wrist abrasions. (*Id.*) The officers harassed Plaintiff because he threatened to sue them for opening his legal mail during a cell search. (*Id.*) Plaintiff alleges excessive force and a state law claim for assault and battery against Sanches and John Doe. (*Id.* at 6-7, 19).

### i. Excessive Force

In *Kingsley v. Hendrickson*, 135 S.Ct. 2466 (2015), the Supreme Court held that a pretrial detainee states a claim for excessive force under the Fourteenth Amendment if: (1) the defendant's use of force was used purposely or knowingly, and (2) the force purposely or knowingly used against the pretrial detainee was objectively unreasonable. *Id.* at 2472-73.

---

[1] The Court dismisses Defendant Naphcare Staff, without prejudice, from this case. Plaintiff must identify the individual Naphcare employees who violated his rights.

[2] Plaintiff appears to allege eight different claims from those three counts. (*See* ECF No. 1-1 at 18-22).

The Court finds that Plaintiff states a colorable claim for excessive force. Based on the allegations, Plaintiff stopped by the stairs to avoid being pushed down the stairs. As a result, Sanches slammed Plaintiff to the ground, kneed Plaintiff's face, and twisted Plaintiff's wrists. For screening purposes, the force seems objectively unreasonable given that Plaintiff was trying to avoid falling down the stairs. The excessive force claim will proceed against Defendant Sanches.

### ii. Failure to Protect

With respect to Officer John Doe, there are no allegations that he participated in the force. However, it does appear that John Doe witnessed the force and did not do anything to protect Plaintiff. A pretrial detainee states a claim for failure-to-protect against an individual officer under the Fourteenth Amendment if: (1) the defendant made an intentional decision with respect to the conditions under which the pretrial detainee was confined; (2) those conditions put the pretrial detainee at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the pretrial detainee's injuries. *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016).

The Court finds that Plaintiff states a colorable claim against Defendant John Doe for failure to protect. Based on the allegations, John Doe recognized that Sanches was putting Plaintiff at risk of serious harm, questioned what Sanches was doing, and told Sanches to take it easy. However, John Doe did not stop Sanches from using the force against Plaintiff. This claim will proceed against John Doe when Plaintiff learns his identity.[3]

---

[3] Although the use of "Doe" to identify a defendant is not favored, flexibility is allowed in some cases where the identity of the parties will not be known prior to filing a complaint but can subsequently be determined through discovery. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). If the true identity of any of the Doe Defendant(s) comes to light during discovery, Plaintiff may move to amend his complaint to assert claims against the Doe Defendant(s) at that time.

### iii.    State Law Claim

The Court will permit the state law claim of assault and battery to proceed against Defendant Sanches based on supplemental jurisdiction. *See* 28 U.S.C. § 1367(a) (stating that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy").

### B.    Count II

In Count II, Plaintiff alleges the following:  On November 16, 2016, Brown woke Plaintiff up for medication.  (ECF No. 1-1 at 8).  Brown kept telling Plaintiff to open his mouth, Plaintiff told Brown not to start with him, and Plaintiff commented about the sexual allegations against Brown.  (*Id.*)  Brown responded, "Oh, alright, I'll be back."  (*Id.*)  Ten minutes later, Brown returned and told Plaintiff to roll up his stuff because Plaintiff was moving "to the nasty cell in the corner where [Plaintiff] can't see the T.V."  (*Id.*)  When Plaintiff asked to speak to the sergeant, Brown responded, "Oh, that's all I wanted to hear."  (*Id.*)  F

Plaintiff asked Sgt. Rogers why he was being moved.  (*Id.*)  Sgt. Rogers told Plaintiff that if Plaintiff did not move then Plaintiff would be moved by force.  (*Id.*)  Sgt. Rogers told Plaintiff that there would be no negotiating the move.  (*Id.*)  Plaintiff stated that he had done nothing wrong and that Sanches and Brown were harassing him.  (*Id.*)

Sgt. Rogers was in charge of the SERT Team.  (*Id.*)  The SERT Team went to Plaintiff's cell and yelled to him that if Plaintiff did not cuff up then they would use deadly force against him.  (*Id.* at 9).  Plaintiff was traumatized from the day before and "froze up" and did not comply.  (*Id.*)  Plaintiff told them that he would not fight or resist and to do what they had to do.  (*Id.*)  The SERT Team sprayed chemicals in Plaintiff's room which caused Plaintiff to cough, choke, and spit up saliva.  (*Id.*)  The SERT Team sprayed Plaintiff again.  (*Id.*)  While Plaintiff was choking, the SERT Team stuck a shotgun in the room.  (*Id.*)  Plaintiff got scared and held a mattress against his body with his hand

exposed. (*Id.*) Torrez shot Plaintiff's hand. (*Id.*) The metal box that was supposed to hold the rubber ball malfunctioned and clacked around Plaintiff's cell after accidentally being ejected from the shotgun. (*Id.*) Plaintiff asked Torrez if the metal was supposed to be shot out with the rubber ball and he responded, "hell no." (*Id.*) The malfunctioning shot gun broke Plaintiff's finger. (*Id.*)

The SERT Team rushed into Plaintiff's cell while Plaintiff was lying face down with his hands behind his back. (*Id.* at 10). Plaintiff felt a heavy weight on his back and could not breathe from the chemical spray. (*Id.*) One of the SERT officers grabbed Plaintiff's bloody, broken finger and twisted it. (*Id.*) Plaintiff yelled out in pain. (*Id.*) The SERT officers took Plaintiff to a mental health unit where they stripped Plaintiff naked and took the mattress from the room. (*Id.*) Plaintiff had nowhere to lie down. (*Id.*) Jail officials rolled an x-ray machine into the cell and took an x-ray of Plaintiff's hand. (*Id.*) Plaintiff asked for a doctor and to have the chemicals rinsed from his body. (*Id.*)

Jail officials left Plaintiff naked and bleeding in the cell for eight hours with an open wound. (*Id.*) Jail officials took Plaintiff's pain medication away and did not permit Plaintiff to see a doctor for two months. (*Id.*) When internal affairs came to speak to Plaintiff, Sgt. Rogers and Torrez were there giving Plaintiff intimidating and threatening looks. (*Id.*) Plaintiff was not able to take a shower and rinse the chemicals off for four days to a week. (*Id.* at 11.)

A few hours after the x-rays, Sgt. Rogers informed Plaintiff that his finger was broken. (*Id.*) When Plaintiff asked for a doctor to put a splint on his finger, Sgt. Rogers told Plaintiff that certain medical treatment was not permitted in Plaintiff's cell unit. (*Id.*) Plaintiff alleges claims for excessive force and delay of medical treatment. (*Id.* at 8, 19-20).

### i. Excessive Force

The Court finds that Plaintiff states a colorable claim for excessive force. *See* Excessive Force, Part III.A.i. *supra*, for a discussion of the Fourteenth Amendment legal standard for pretrial-detainee-excessive-force claims. Based on the allegations, Plaintiff

stated that he would not resist or fight, yet the SERT Team sprayed chemicals at Plaintiff, shot him, and broke his finger. This claim will proceed against Defendants Rogers, Torrez, Brown, and Doe SERT Team members (when Plaintiff learns their identities).

## ii. Serious Medical Needs

A pretrial detainee's right to be free from punishment is grounded in the Due Process Clause, but courts borrow from Eighth Amendment jurisprudence when analyzing the rights of pretrial detainees. *See Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1205 (9th Cir. 2008). Although the U.S. Supreme Court and the Ninth Circuit have started to apply an objectively reasonable standard to determine whether a pretrial detainee's rights have been violated, those courts have not fully addressed the new standard for medical claims and pretrial detainees. *See generally Kingsley v. Hendrickson*, 135 S.Ct. 2466 (2015) (holding that an objectively reasonable standard applies to a pretrial detainee's excessive force claims); *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (holding that an objectively reasonable standard applies to a pretrial detainee's failure to protect claims). For screening purposes, the Court analyzes Plaintiff's claims under the traditional Eighth Amendment deliberate indifference standard. The Court finds that Plaintiff sufficiently states a colorable claim under the more stringent subjective standard and, thus, states a colorable claim under any objective standard.

The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'" *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). A prison official violates the Eighth Amendment when he acts with "deliberate indifference" to the serious medical needs of an inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012).

To establish the first prong, "the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations omitted).  To satisfy the deliberate indifference prong, a plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id.*  "Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id.* (internal quotations omitted).  When a prisoner alleges that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay led to further injury. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (holding that "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference").

The Court finds that Plaintiff states a colorable claim for deliberate indifference to serious medical needs.  Based on the allegations, Rogers knew that the shotgun had broken Plaintiff's finger after the x-ray but refused to get medical help for Plaintiff for two months.  Additionally, based on the allegations, Rogers did not permit Plaintiff to wash the chemicals off of his body for four to seven days.  This claim will proceed against Defendant Rogers.

**C.    Count III**

In Count III, Plaintiff alleges the following:  Since November 16, 2016, Plaintiff has been in constant pain and discomfort due to his crippled and deformed hand.  (ECF No. 1-1 at 12).  If Williamson and Rogers would have treated Plaintiff's broken finger immediately when they learned of the injury from the x-ray, Plaintiff would not be in pain. (*Id.*)  Two months later, an outside specialist told Plaintiff that he would suffer from arthritis for the rest of his life and that it was too late for surgery because his finger had healed broken.  (*Id.* at 12-13).  The specialist, an orthopedic doctor, told Plaintiff that it would be unwise to re-break or re-set his finger because he had waited too long for it to be operated

on. (*Id.* at 13).  Dr. Lopez, the CCDC doctor, told Plaintiff that Plaintiff should get a second opinion because Dr. Lopez thought that Plaintiff's finger needed to be re-broke.  (*Id.*)  Jail officials sent Plaintiff to the same specialist for a second opinion who, of course, gave the same opinion.  (*Id.*)  Plaintiff continues to suffer in pain because jail officials took Plaintiff off of pain medication without any warning or reason.  (*Id.*)

After jail officials shot Plaintiff, they took Plaintiff to a cell and stripped him naked.  (*Id.* at 14).  Jail officials kept Plaintiff in a cell covered with urine and feces for four days while his finger bled.  (*Id.*)

Lombardo was the sheriff.  (*Id.* at 15).  Plaintiff was an "involuntary recipient to [Lombardo's] indirect participation through [third] party contract breach."  (*Id.*)  Plaintiff argues that he is a third-party beneficiary to the contract between Naphcare and the jail.  (*Id.* at 14).  Plaintiff alleges claims for serious medical needs, conditions of confinement, supervisory liability, and a state law claim for negligence.  (*Id.* at 12, 20-22).

### i.    Serious Medical Needs

The Court finds that Plaintiff states a colorable claim for serious medical needs.  *See* Serious Medical Needs, Part III.B.ii. *supra*, for a discussion of the legal standard for pretrial detainees and serious medical needs claims.   Based on the allegations, Williamson and Rogers knew that Plaintiff's finger was broken on the day of the x-ray, yet delayed providing Plaintiff any medical treatment for his broken finger until two months later.  Based on the allegations, Plaintiff's finger healed broken, he will suffer from arthritis for the rest of his life, and he suffers in pain without any pain medication. This claim will proceed against Defendants Williamson and Rogers.

### ii.    Conditions of Confinement

Although the U.S. Supreme Court and the Ninth Circuit have started to apply an objectively reasonable standard to determine whether a pretrial detainee's rights have been violated, those courts have not fully addressed the new standard for conditions of confinement claims involving pretrial detainees.  *See generally Kingsley v. Hendrickson*, 135 S.Ct. 2466 (2015) (holding that an objectively reasonable standard applies to a

pretrial detainee's excessive force claims); *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (holding that an objectively reasonable standard applies to a pretrial detainee's failure to protect claims). For screening purposes, the Court analyzes Plaintiff's claims under the traditional Eighth Amendment deliberate indifference standard. The Court finds that Plaintiff sufficiently states a colorable claim under the more stringent subjective standard and, thus, states a colorable claim under any objective standard.

The "treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). However, "[p]rison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). When determining whether the conditions of confinement meet the objective prong of the Eighth Amendment analysis, the court must analyze each condition separately to determine whether that specific condition violates the Eighth Amendment. *See Wright v. Rushen*, 642 F.2d 1129, 1133 (9th Cir. 1981). As to the subjective prong of the Eighth Amendment analysis, prisoners must establish prison officials' "deliberate indifference" to the unconstitutional conditions of confinement to establish an Eighth Amendment violation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

When considering the conditions of confinement, the court should consider the amount of time to which the prisoner was subjected to the condition. *Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005). "[S]ubjection of a prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment." *Anderson v. Cnty. of Kern*, 45 F.3d 1310, 1314, *opinion amended on denial of reh'g*, 75 F.3d 448 (9th Cir. 1995).

The Court finds that Plaintiff states a colorable claim for conditions of confinement based on sanitation. Based on the allegations, Rogers left Plaintiff in a cell that was covered in feces and urine for four days while Plaintiff had a bleeding and open wound

with his broken finger.  The Court finds that, based on the allegations, four days in a feces covered cell with an open, bleeding wound arguably violates the constitution.  This claim will proceed against Defendant Rogers.

### iii.    Supervisory Liability

To the extent that Plaintiff is attempting to hold Lombardo liable for his officers' constitutional violations, the Court dismisses the claim, without prejudice.  There are no allegations that Lombardo knew of or participated in the excessive force, deprivation of medical care, or conditions of confinement violations. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that "[a] supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under [§]1983").

Additionally, to the extent that Plaintiff is alleging he is a third-party beneficiary to a contract, this breach-of-contract claim fails.  Generally, "[t]o sue as a third-party beneficiary of a contract, the third party must show that the contract reflects the express or implied intention of the parties to the contract to benefit the third party." K*lamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1211 (9th Cir. 1999), *opinion amended on denial of reh'g*, 203 F.3d 1175 (9th Cir. 2000).  However, "[p]arties that benefit from a government contract are generally assumed to be incidental beneficiaries, and may not enforce the contract absent a clear intent to the contrary." *Id.*  "Government contracts often benefit the public, but individual members of the public are treated as incidental beneficiaries unless a different intention is manifested." *Id.*

The Court finds that Plaintiff fails to state a colorable claim.  The Court finds that Plaintiff would be no more than an incidental beneficiary of any alleged contract between Naphcare and the CCDC and would not be able to show a clear intent to the contrary.  The Court dismisses this claim, with prejudice, as amendment would be futile.

### iv.    State Law Claim

The state law claim for medical negligence against Defendant Williamson may

proceed based on supplemental jurisdiction. *See* 28 U.S.C. § 1367(a) (stating that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy").

## IV.   MOTIONS FOR APPOINTMENT OF COUNSEL

Plaintiff has filed two motions for appointment of counsel. (ECF No. 8, 19). A litigant does not have a constitutional right to appointed counsel in 42 U.S.C. § 1983 civil rights claims. *Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th Cir. 1981). Pursuant to 28 U.S.C. § 1915(e)(1), "[t]he court may request an attorney to represent any person unable to afford counsel." However, the court will appoint counsel for indigent civil litigants only in "exceptional circumstances." *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009) (§ 1983 action). "When determining whether 'exceptional circumstances' exist, a court must consider 'the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the legal issues involved." *Id.* "Neither of these considerations is dispositive and instead must be viewed together." *Id.* In the instant case, the Court does not find exceptional circumstances that warrant the appointment of counsel at this stage of the litigation. The Court denies the motions for appointment of counsel at this time without prejudice.

The Court, however, will consider a renewed motion for the appointment of counsel if Plaintiff's claims survive summary judgment.

## V.   CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's application to proceed *in forma pauperis* (ECF No. 1) without having to prepay the full filing fee is **GRANTED**. Plaintiff shall **not** be required to pay an initial installment fee. Nevertheless, the full filing fee shall still be due, pursuant

to 28 U.S.C. § 1915, as amended by the Prisoner Litigation Reform Act. The movant herein is permitted to maintain this action to conclusion without the necessity of prepayment of fees or costs or the giving of security therefor. This order granting *in forma pauperis* status shall not extend to the issuance and/or service of subpoenas at government expense.

**IT IS FURTHER ORDERED** that, pursuant to 28 U.S.C. § 1915(b)(2), the Clark County Detention Center shall pay to the Clerk of the United States District Court, District of Nevada, 20% of the preceding month's deposits to the account of **Joshua H. Crittendon, #7511692** (in months that the account exceeds $10.00) until the full $350.00 filing fee has been paid for this action. If Plaintiff should be transferred and become under the care of the Nevada Department of Corrections, the CCDC Accounting Supervisor is directed to send a copy of this order to the attention of the Chief of Inmate Services for the Nevada Department of Corrections, P.O. Box 7011, Carson City, NV 89702, indicating the amount that Plaintiff has paid toward his filing fee, so that funds may continue to be deducted from Plaintiff's account. The Clerk shall send a copy of this order to the **CCDC Accounting Supervisor, 330 S. Casino Center Blvd., Las Vegas, NV 89101.**

**IT IS FURTHER ORDERED** that, even if this action is dismissed, or is otherwise unsuccessful, the full filing fee shall still be due, pursuant to 28 U.S.C. §1915, as amended by the Prisoner Litigation Reform Act.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall file the complaint (ECF No. 1-1).

**IT IS FURTHER ORDERED** that the portion of Count I, alleging excessive force, will proceed against Defendant Sanches. The portion of Count I, alleging failure to protect, will proceed against John Doe when Plaintiff learns his identity. The portion of Count I, alleging state law claims, will proceed against Defendant Sanches based on supplemental jurisdiction.

**IT IS FURTHER ORDERED** that the portion of Count II, alleging excessive force, will proceed against Defendants Rogers, Torrez, Brown, and Doe SERT team members

(when Plaintiff learns their identities). The portion of Count II, alleging serious medical needs, will proceed against Defendant Rogers.

**IT IS FURTHER ORDERED** that the portion of Count III, alleging serious medical needs, will proceed against Defendants Williamson and Rogers. The portion of Count III, alleging conditions of confinement, will proceed against Defendant Rogers. The portion of Count III, alleging supervisory liability, is dismissed against Defendant Lombardo without prejudice. The portion of Count III, alleging breach of contract, is dismissed, with prejudice, against Defendant Lombardo. The portion of Count III, alleging a state law claim for medical negligence, may proceed against Defendant Williamson based on supplemental jurisdiction.

**IT IS FURTHER ORDERED** that Defendant Naphcare Staff is dismissed, without prejudice, from the case.

**IT IS FURTHER ORDERED** that the motions for appointment of counsel (ECF No. 8, 19) are denied without prejudice.

**IT IS FURTHER ORDERED** that the Clerk of Court **SHALL ISSUE** summonses for Defendants Rogers, Torrez, Williamson, Sanches, and Brown, **AND DELIVER THE SAME**, to the U.S. Marshal for service. The Clerk **SHALL SEND** to Plaintiff **five (5)** USM-285 forms. The Clerk also **SHALL SEND** a copy of the complaint (ECF No. 1-1) and a copy of this order to the U.S. Marshal for service on Defendant(s). Plaintiff shall have **thirty (30) days** within which to furnish to the U.S. Marshal the required USM-285 forms with relevant information as to each Defendant on each form. Within **twenty (20) days** after receiving from the U.S. Marshal a copy of the USM-285 forms showing whether service has been accomplished, Plaintiff must file a notice with the Court identifying which Defendant(s) were served and which were not served, if any. If Plaintiff wishes to have service again attempted on an unserved Defendant(s), then a motion must be filed with the Court identifying the unserved Defendant(s) and specifying a more detailed name and/or address for said Defendant(s), or whether some other manner of service should be attempted.

**IT IS FURTHER ORDERED** that henceforth, Plaintiff shall serve upon Defendants or, if appearance has been entered by counsel, upon the attorney(s), a copy of every pleading, motion or other document submitted for consideration by the Court. Plaintiff shall include with the original paper submitted for filing a certificate stating the date that a true and correct copy of the document was mailed to the Defendants or counsel for the Defendants. The Court may disregard any paper received by a district judge or magistrate judge which has not been filed with the clerk, and any paper received by a district judge, magistrate judge or the clerk which fails to include a certificate of service.

**IT IS FURTHER ORDERED** that ***Defendant Williamson (Naphcare Director)* SHALL** provide the Plaintiff regular **(weekly for at least one to two hours**) access to his **ENTIRE** medical file throughout the pendency of this litigation. Failure to provide such access may lead to sanctions, *including monetary sanctions and up to case-dispositive sanctions.*

**IT IS FURTHER ORDERD** that, given this Order, the following Motions [20, 21 24 and 26] are DISMISSED without prejudice to being filed after a status or motion hearing in this case.

**IT IS FURTHER ORDERED** that Plaintiff shall NOT file any further motions without leave of the Court except for motions involving direct threats to his safety or a serious potentially life-threatening medical condition.

**IT IS FURTHER ORDERED** that a *hearing* is set on Plaintiff's Motion [20] for Preliminary Injunction for **January 11, 2018 at 11:30 a.m. in courtroom 7D**. *Counsel for Defendants Joseph Lombardo and Defendant Williamson, who have previously entered special appearances, are ORDERED to appear.*

**IT IS FURTHER ORDERED** that counsel for Defendant Joseph Lombardo will ensure that Plaintiff receives a copy of this Order by **December 30, 2017**.

DATED: December 28, 2017.

_____
RICHARD F. BOULWARE, II
UNITED STATES DISTRICT JUDGE