UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JOSHUA H. CRITTENDON,<br><br>Plaintiff,<br><br>v.<br><br>JOE LOMBARDO, *et al.*,<br><br>Defendants. | Case No. 2:17-cv-01700-RFB-PAL<br><br>**AMENDED ORDER** |

## I. INTRODUCTION

Before the Court is Plaintiff Joshua H. Crittendon ("Plaintiff")'s Motion for Temporary Restraining Order (TRO), (ECF No. 3) and Motion for Preliminary Injunction (ECF No. 4). For the reasons stated below, the Court DENIES Plaintiff's motions without prejudice. The Court also addresses several other motions filed by Plaintiff: a Motion for Copies of Written Transaction (ECF No. 16), and a Motion for Leave and/or Stay of Time (ECF No. 39).

## II. BACKGROUND

Plaintiff filed his original Complaint and Motion to Leave to Proceed in forma pauperis on June 16, 2017. (ECF No. 1).[1] Plaintiff, a pretrial detainee, asserts unnecessary and excessive use of force claims, as well as a claim for deliberate indifference in the denial of medical treatment, alleging that Defendants assaulted him and caused him irreparable harm. Plaintiff also filed the instant Motion for TRO and Motion for Preliminary Injunction on August 1, 2017, whereby he asks this Court order that he be moved to another facility to get medical care. (ECF No. 3, 4). On August 10, 2017, the Court held a hearing on the motions and heard representation from Plaintiff. The hearing was continued to the following day; although counsel for Defendants had not yet been

---

[1] On December 28, 2017, the Court entered an Order granting leave to proceed in forma pauperis and screening the Complaint. (ECF No. 30). The Complaint was filed on December 29, 2017. (ECF No. 31).

served, they appeared at August 11th hearing. During the August 11th hearing, the Court ordered Defendant Naphcare to provide Plaintiff with access to his medical records and Defendants Joe Lombardo ("Lombardo") and the Las Vegas Metropolitan Police Department ("LVMPD") to provide Plaintiff access to certain videotape footage. (ECF No. 14). The Court scheduled a future hearing on the matter, which was held on January 11, 2018. (ECF No. 35).

On January 31, 2018, Plaintiff filed a Motion for Leave and/or Stay of Time to Pursue Counsel. (ECF No. 39). Defendants Lombardo and LVMPD filed a Response on February 14, 2018. (ECF No. 43).

### III. FACTUAL ALLEGATIONS

The Court summarizes the allegations from the Complaint as follows. Plaintiff's claims stem from two events in which he alleges that he was assaulted by Clark County Department of Corrections ("CCDC") corrections officers. On November 15, 2016, Corrections Officer Sanchez "cuffed-up" Plaintiff and grabbed him by the shirt, directing him out of his cell for a visit with his attorney. As they approached the stairs, Plaintiff stopped to avoid being pushed onto the stairs. Sanchez "took this as resistance," then tripped and slammed Plaintiff to the ground. The next day, Corrections Officer Brown woke Plaintiff for his medication. Plaintiff took the medication and Brown told him to open his mouth. He asked Brown not to "start with him today," implying that he was uncomfortable with the request because Brown had sexual allegations against him about which Plaintiff had repeatedly confronted him. Plaintiff told him "once is enough." Brown got mad and told Plaintiff, "I'll be back." Plaintiff claims Brown retaliated against him, returning ten minutes later to move Plaintiff to a corner cell where Plaintiff could not see the television. Plaintiff refused to leave. Brown called for back-up. Other corrections officers came to Plaintiff's cell and threatened him with deadly force if he did not "cuff-up." After Plaintiff did not comply, the corrections officers sprayed chemicals into his cell, causing Plaintiff to cough and choke, and stuck a shotgun in the cell. As Plaintiff was holding on to his mattress, an officer fired the shotgun. The shotgun malfunctioned and a rubber ball that was accidentally ejected hit Plaintiff's finger, causing it to break. The corrections officers then extracted Plaintiff from the cell and took him to the mental

health unit. Plaintiff was placed into a feces-smeared room, stripped naked, and left on the floor with no mattress. He requested to be rinsed-off because the chemicals were burning his eyes and skin, and he was bleeding from his exposed finger. CCDC denied his request for at least four days. Hours after the extraction, Plaintiff had an x-ray taken of his finger but did not see a doctor for two months. CCDC denied him pain medication that he was prescribed. Plaintiff's alleges that his finger is permanently disfigured as a result of these events. He also alleges that he suffers from an underlying mental disorder, spine injury, and emotional trauma.

### IV. LEGAL STANDARD

#### a. Motion for Temporary Restraining Order or Injunctive Relief

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). To obtain a preliminary injunction, a plaintiff must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction." Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc., 758 F.3d 1069, 1071 (9th Cir. 2014), as amended (Mar. 11, 2014) (citing Winter, 555 U.S. 7, 20 (2008)). A preliminary injunction may issue under the "serious questions" test. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134 (9th Cir. 2011) (affirming the continued viability of this doctrine post-Winter). According to this test, a plaintiff can obtain a preliminary injunction by demonstrating "that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor," in addition to the other Winter elements. Id. at 1134-35 (citation omitted).

A temporary restraining order ("TRO") may be issued without notice to the adverse party only if the moving party: (1) provides a sworn statement clearly demonstrating "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," and (2) sets forth the efforts made to notify the opposing party and why notice should not be required. Fed. R. Civ. P. 65(b) (1). TROs issued without notice "are no doubt

necessary in certain circumstances, but under federal law they should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." Granny Goose Foods, Inc. v. Bhd. of Teamsters, 415 U.S. 423, 439 (1974) (citation omitted).

Injunctions affecting prison conditions "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2).

### b. Due Process Challenge to Excessive Force in Pretrial Detention

A pretrial detainee alleging excessive force must show that the defendant acted with a greater degree of culpability than negligence. See Kingsley v. Hendrickson, 135 S. Ct. 2466, 2472 (2015). ("[W]e have stated, 'liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.'") (citation omitted). However, as to the state of mind regarding the nature of the force, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." Id. "A court (judge or jury) cannot apply this standard mechanically. Rather, objective reasonableness turns on the facts and circumstances of each particular case. . . . A court must also account for the legitimate interests that stem from the government's need to manage the facility in which the individual is detained, appropriately deferring to "policies and practices that in the judgment" of jail officials "are needed to preserve internal order and discipline and to maintain institutional security." Id. at 2473 (internal citations and quotation marks omitted).

In evaluating the reasonableness of force used, the Court may consider the following factors: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." Id. (citations and quotation marks omitted). This list, however, is not exhaustive. Id.

### c. Due Process Challenge to Deliberate Indifference to Serious Medical Needs

A pretrial detainee's right to be free from punishment is grounded in the Due Process Clause, but courts borrow from Eighth Amendment jurisprudence when analyzing the rights of pretrial detainees. See Pierce v. Cnty. of Orange, 526 F.3d 1190, 1205 (9th Cir. 2008). Although the U.S. Supreme Court and the Ninth Circuit have started to apply an objectively reasonable standard to determine whether a pretrial detainee's rights have been violated, those courts have not fully addressed the new standard for medical claims and pretrial detainees. See generally Kingsley v. Hendrickson, 135 S.Ct. 2466 (2015) (holding that an objectively reasonable standard applies to a pretrial detainee's excessive force claims); Castro v. Cty. of Los Angeles, 833 F.3d 1060, 1071 (9th Cir. 2016) (holding that an objectively reasonable standard applies to a pretrial detainee's failure to protect claims).

The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'" Estelle v. Gamble, 429 U.S. 97, 102 (1976). A prison official violates the Eighth Amendment when he acts with "deliberate indifference" to the serious medical needs of an inmate. Farmer v. Brennan, 511 U.S. 825, 828 (1994). "To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled on other grounds by Peralta v. Dillard, 744 F.3d 1076 (9th Cir. 2014). To establish the first prong, "the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations omitted). To satisfy the deliberate indifference prong, a plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Id. "Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. (internal quotations omitted). When a prisoner alleges that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay led to further injury. See

Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (holding that "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference").

## V. DISCUSSION

The Court finds that, as a threshold matter, Plaintiff has not articulated, or otherwise provided, facts to support that "immediate and irreparable injury, loss, or damage will result" before Defendants can be heard, such that a TRO is warranted. Fed. R. Civ. P. 65(b)(1). The Court also finds that at this point in time, Plaintiff is not entitled to injunctive relief. The Court finds that Plaintiff has established a likelihood of success on the merits as to his unnecessary and deadly force claims. Plaintiff's allegations regarding being shot in the hand with a rubber ball after a shotgun malfunctioned indicate reckless conduct that may support his excessive force claim. As to the deliberate indifference claim, however, Plaintiff has not sufficiently alleged a serious medical need and failure to treat a condition. Therefore, he is unlikely to succeed on the merits of this claim.

Furthermore, Plaintiff has not shown irreparable harm such that an ongoing injunction is necessary. Plaintiff alleges that he faces continual retaliation and has been denied medical treatment but has not provided sufficient facts to substantiate the retaliation claim. It is unclear from his motion what retaliatory actions any particular Defendant has taken. Additionally, Plaintiff seeks to be moved to another jurisdiction or facility because he fears for his life and has not received necessary medical care. Plaintiff claims that his injuries after the alleged assaults on November 15 and 16, 2016 were a broken finger, abrasions, and bruising on the wrists. However, Plaintiff concedes that he did receive medical treatment, albeit not immediately. He admits that he received x-rays of his finger after the assault and saw a hand specialist on two occasions. Plaintiff's dissatisfaction with the treatment he received, without more, does not give rise to a constitutional violation meriting injunctive relief. Plaintiff has not articulated that he has an ongoing medical or mental health condition requiring a specific treatment or one that would entitle him to receive a particular medication other than what has already been prescribed.

Given the Court's findings, the remaining factors for consideration as to imposition of a TRO or injunction need not be addressed at this time. Therefore, the Court denies the Motion for TRO and Motion for Preliminary Injunction without prejudice. With respect to Plaintiff's more recent filing, the Court denies in part the request for leave or stay, as there has not previously been a deadline set for Plaintiff to file an amended Complaint. However, the Court now orders that Plaintiff is given leave to file an amended Complaint **within sixty days**. Plaintiff is instructed that if he chooses not to file an amended Complaint, the case will proceed with the current Complaint. If Plaintiff chooses to file an amended Complaint, he is instructed to set forth factual allegations regarding his constitutional challenges, against each particular Defendant. Plaintiff also alleges that Defendant Williamson has not followed the Court's prior order allowing Plaintiff access to his medical files for one to two hours each week. Now that Defendant Williamson has been served, the Court reasserts its prior order that Plaintiff shall have access to his medical file on a weekly basis. At this time, the Court denies Plaintiff's request to compel Defendant LVMPD to provide him access to certain video footage.

### VI. CONCLUSION

**IT IS THEREFORE ORDERED** that the Motion for Temporary Restraining Order (ECF No. 3) is DENIED without prejudice.

**IT IS FURTHER ORDERED** that the Motion for Preliminary Injunction (ECF No. 4) is DENIED without prejudice.

**IT IS FURTHER ORDERED** that the Motion for Copies of Written Transaction (ECF No. 16) is GRANTED. The Court approves the request for transcripts of the hearings held on August 10, 2017 and August 11, 2017.

**IT IS FURTHER ORDERED** that the Motion for Leave and/or Stay is GRANTED in part and DENIED in part. If Plaintiff chooses to file an Amended Complaint, he must do so **within sixty days**.

**IT IS FURTHER ORDERED** that Defendant Williamson SHALL provide the Plaintiff regular (weekly for at least one to two hours) access to his ENTIRE medical file throughout the

pendency of this litigation. As previously ordered, failure to provide such access may lead to sanctions, including monetary sanctions and up to case-dispositive sanctions.

**IT IS FURTHER ORDERED** that Plaintiff shall NOT file any further motions without leave of the Court except for motions involving direct threats to his safety or a serious and potentially life-threatening medical condition.

DATED this 30th day of March, 2018.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**